UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORDAN ROSENBLATT,<br><br>     Plaintiff,<br><br>  v.<br><br>EXTRACTION OIL & GAS, INC., THOMAS B. TYREE, JR., BENJAMIN DELL, MORRIS CLARK, CARNEY HAWKS, CARRIE M. FOX, HOWARD A. WILLARD, III, and MICHAEL WICHTERICH,<br><br>     Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Jordan Rosenblatt ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Extraction Oil & Gas, Inc. ("Extraction" or the "Company") and Extraction's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Bonanza Creek Energy, Inc. through its wholly-owned subsidiary Raptor Eagle Merger Sub, Inc. (collectively "Bonanza Creek").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on September 28, 2021. The Proxy recommends that Extraction stockholders vote in favor of a proposed transaction (the "Proposed Transaction")

1

whereby Extraction is acquired by Bonanza Creek. The Proposed Transaction was first disclosed on May 10, 2021, when Extraction and Bonanza Creek announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Extraction stockholders will receive 1.1711 shares of Bonanza Creek common stock for each Extraction share that they hold (the "Merger Consideration"). The deal is expected to close in the third quarter of 2021.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections for both Extraction and Bonanza Creek, as well as the financial analyses conducted by Petrie Partners LLC ("Petrie Partners"), Extraction's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Extraction's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Extraction.

6. Defendant Extraction is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 370 17th Street, Suite 5200, Denver, Colorado, 80202. Extraction common stock trades on NASDAQ under the ticker symbol "XOG."

7. Defendant Thomas B. Tyree, Jr. has been CEO and a director of the Company since

January 2021. From March 2020 until January 2021 Defendant Tyree served as Executive Chairman of the Board.

8. Defendant Benjamin Dell has been a director of the Company since January 2021. Defendant Dell serves as Chairman of the Board.

9. Defendant Morris Clark has been a director of the Company since January 2021.

10. Defendant Carney Hawks has been a director of the Company since January 2021.

11. Defendant Carrie M. Fox has been a director of the Company since January 2021.

12. Defendant Howard A. Willard, III has been a director of the Company since January 2021.

13. Defendant Michael Wichterich has been a director of the Company since January 2021.

14. Defendants Tyree, Dell, Clark, Hawks, Fox, Willard, and Wichterich are collectively referred to herein as the "Board."

15. Nonparty Bonanza Creek Energy, Inc. is a Delaware corporation with its principal executive offices located at 410 17th Street, Suite 1400, Denver, Colorado 80202. Bonanza Creek Energy, Inc. common stock trades on NYSE under the ticker symbol "BCEI."

16. Nonparty Raptor Eagle Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Bonanza Creek Energy, Inc.

17. Nonparty CPPIB Crestone Peak Resources America Inc. ("Crestone Peak") is a Delaware corporation.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

21. Extraction is an oil and gas company focused on developing and producing oil and gas products in the Wattenberg Field of the Denver-Julesburg Basin (the "DJ Basin") in the Rocky Mountain region. As of December 31, 2020, the Company had 140,000 net acres in the DJ Basin, with more than 1300 gross wells capable of producing and 88,907 BOE/d of average net daily production. Extraction entered Chapter 11 bankruptcy proceedings on June 14, 2020. The Company's reorganization plan became effective on January 20, 2021, and the Company emerged from bankruptcy then.

22. On May 9, 2021, the Company entered into the Merger Agreement with Bonanza Creek.

23. According to the press release issued on May 10, 2021 announcing the Proposed Transaction:

**Bonanza Creek and Extraction to Combine in Merger of Equals, Creating Civitas Resources – a New Colorado Energy Leader and the State's First Net-Zero Oil & Gas Producer**

**DENVER – May 10, 2021 –** Bonanza Creek Energy, Inc. (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc. (NASDAQ: XOG) ("Extraction"), today announced that they have entered into a definitive agreement to combine in an all-stock merger of equals. The combined company, to be named Civitas Resources, Inc. ("Civitas"), will be the largest pure-play energy producer in Colorado's Denver-Julesburg (DJ) Basin, with an aggregate enterprise value of approximately $2.6 billion (based on the closing share prices of Bonanza Creek and Extraction on May 7, 2021).

**TRANSACTION HIGHLIGHTS**

- The merger will create a leading energy producer in Colorado's DJ Basin, a basin characterized by low operating costs, extensive infrastructure, ample takeaway, multiple producing horizons and responsible energy production.

- The combined company will operate across approximately 425,000 net acres, with a production base of 117 thousand barrels of oil equivalent per day (117 Mboe/d, on a pro forma 1Q21 production basis).

- The transaction is expected to be significantly accretive to free cash flow and other per-share metrics.

- At closing, Civitas is projected to be one of most well-capitalized companies in the industry, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA.

- Civitas expects to achieve annual expense and capital savings of approximately $25 million.

- Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a distribution of approximately half of the transaction synergies to Civitas' shareholder base.

- Bonanza Creek President and Chief Executive Officer, Eric Greager, will serve as President and CEO of Civitas. Other senior leadership positions will be filled by current executives of Bonanza Creek and Extraction.

- Extraction Chairman of the Board, Ben Dell, will serve as Chairman of Civitas, and each of Bonanza Creek and Extraction will nominate four directors to Civitas' diverse, eight-member Board.

- Civitas will take to the next level an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, defined by operational discipline, a strong balance sheet, commitment to free cash flow generation, financial alignment with stakeholders, environmental and community leadership, and best-in-class governance.

- At closing, Civitas will be Colorado's first net-zero oil and gas producer (scope 1 and scope 2) through an intensive, continuing focus on reducing operational emissions and a multi-year investment in certified emissions offsets.

**CEO COMMENTARY**

"Successful E&P operators will be those who place a priority on disciplined capital deployment, deliver operational and cost excellence, maintain a relentless focus on shareholder value, and have governance standards that are aligned with the times," said Eric Greager, President and Chief Executive Officer of Bonanza Creek. "Bonanza Creek and Extraction each bring a demonstrated commitment to these principles, as well as shared organizational and community values. Together, as Civitas, we will embody an E&P business model ideally suited to deliver for all of our stakeholders."

"We believe the combination of Bonanza Creek and Extraction will create one of the most durable, profitable, and progressive producers in the DJ Basin, with premium assets at the front end of the cost curve," said Tom Tyree, Chief Executive Officer of Extraction. "Collectively, we will create significant value for all stakeholders as we will become Colorado's first net-zero oil and gas producer through the continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, Extraction shareholders will receive a fixed exchange ratio of 1.1711 shares of Bonanza Creek common shares for each share of Extraction common stock owned on the closing date. Based on the exchange ratio and the closing price of Bonanza Creek's common stock on May 7, 2021, Civitas would have an aggregate enterprise value of approximately $2.6 billion. Upon completion of the transaction, Bonanza Creek and Extraction shareholders will each own approximately 50.0% of Civitas, both on a fully diluted basis.

The transaction, which is expected to close in the third quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by Kimmeridge Energy own approximately 38% percent of the outstanding shares of Extraction and have entered into a support agreement to vote in favor of the transaction. The closing of the merger is subject to customary closing conditions, including approvals by Bonanza Creek and Extraction shareholders.

**STRATEGIC RATIONALE**

- **Enhanced scale and geographic breadth** – Civitas will be the largest pure-play energy producer in the DJ Basin with current production of 117 thousand barrels of oil equivalent per day (117 Mboe/d) and approximately 425,000 net acres. These operations are geographically diversified across rural, less regulatory-intensive areas, as well as more prospective suburban acreage.

- **Significant corporate synergies further reduce basin-leading cost structures** – The combined company expects to generate approximately $25 million in annual corporate synergies, including general and administrative savings, LOE efficiencies, and reduced capital costs. The merger of equals structure allows shareholders of both Bonanza Creek and Extraction to benefit from the cost synergies and significant upside potential of the combined company.

- **Acceleration of cash returns to shareholders** – Civitas represents the next level of an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, and is defined by capital discipline, low cost structure, and a strong balance sheet to maximize free cash flow and accelerate the distribution of a material portion of this cash to shareholders. Disciplined reinvestment rates are expected to yield flat to low production growth in the coming years and generate sufficient free cash flow to support material dividends going forward. Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a distribution of approximately half of the transaction synergies to Civitas' shareholder base.

- **Strong balance sheet and liquidity** – The all-stock transaction ensures Civitas will retain a strong balance sheet, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA, at the time of closing, and Civitas will target leverage of approximately 0.5x over the longer term. Civitas will also have significant liquidity. As of April 1, 2021, Bonanza Creek and Extraction had combined cash on hand of $127 million and combined undrawn capacity under their credit facilities of $651 million. The resulting enhanced credit profile is expected to broaden the combined company's access to the capital markets and reduce its overall cost of capital.

- **Advances consolidation strategy** – Civitas represents a major step in Bonanza Creek's and Extraction's consolidation strategies, which have been pursued in conjunction with the companies' continuing initiatives to reduce unit costs, expand margins, enhance returns, increase financial strength, and grow cash distributions to shareholders. Civitas will be positioned to be the preferred consolidation partner for additional transactions in the DJ Basin,

helping to increase its trading liquidity and market relevance, and ultimately to elevate its presence among the top energy producers in the country.

· **Industry-leading commitment to ESG excellence and values** – Civitas will expand on the ESG initiatives pursued by both Bonanza Creek and Extraction, including its commitment to become Colorado's first net-zero oil and gas producer at closing, through continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets. Civitas will pursue additional sustainability objectives including the adoption of an electric vehicle (EV) fleet; installation of EV charging stations in its communities; air monitoring and certification through leading organizations such as Project Canary and pursuit of the Responsibly Sourced Gas certification for its natural gas production; the development of community solar facilities; and the financing of a community fund to sponsor local project grants and scholarships. Upon close, Civitas will provide a progressive framework for achieving its ESG targets, which it believes will address the interests of its operating partners, employees, service providers, and the communities in which the combined company operates.

**GOVERNANCE AND LEADERSHIP**

Following the merger, the Civitas board of directors will consist of eight members, four directors from Bonanza Creek and four from Extraction. Extraction's current Chairman, Ben Dell, will be Chairman of the Board, and Bonanza Creek's current President and Chief Executive Officer will be President and CEO of Civitas. The combined company's executive team will include demonstrated leaders from each of Bonanza Creek and Extraction, including: Matt Owens as EVP and COO, Marianella Foschi as EVP and CFO, Skip Marter as EVP and General Counsel, Sandi Garbiso as SVP and CAO, and Brian Cain as VP of External Affairs and ESG Policy. Civitas will be headquartered in Denver.

24. On June 7, 2021, Bonanza Creek Energy, Inc. entered into a merger agreement with Crestone Peak and Extraction (the "Crestone Peak Merger Agreement"). The Crestone Peak Merger Agreement provides for Bonanza Creek Energy, Inc. to acquire Crestone Peak after the Proposed Transaction closes. Once the proposed transaction with Crestone Peak closes, Extraction stockholders will own approximately 37% of the combined company.

25. According to the press release issued on June 7, 2021 announcing the Crestone Peak Merger Agreement:

**CIVITAS ADDS PREMIUM ASSETS IN DJ BASIN WITH ALL-STOCK ACQUISITION OF CRESTONE PEAK RESOURCES**

*Enhances Civitas' Scale and Synergy Potential, with Addition of Crestone's Highly Complementary and Adjacent Assets*

*Crestone Operations Support Civitas' Commitment to Achieve Net-Zero Emissions*

**DENVER – June 7, 2021 –** Civitas Resources, Inc. ("Civitas" or the "Company"), a Colorado energy leader that will be formed upon closing of the recently-announced merger of Bonanza Creek Energy, Inc. (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc. (NASDAQ: XOG) ("Extraction"), today announced that it has materially advanced its consolidation strategy in the Denver-Julesburg (DJ) Basin by entering into a definitive agreement to acquire Crestone Peak Resources ("Crestone"), another leading energy producer in the region. Civitas is expected to have an enterprise value of approximately $4.5 billion (based on the closing market equity capitalizations of Extraction and Bonanza Creek as of June 4, 2021), and will be optimally positioned to increase efficiencies through combining operations across more than half a million net acres and an estimated production base of approximately 160,000 barrels of oil equivalent per day.

The agreement to acquire Crestone represents the most recent initiative in Civitas' execution of the new E&P business model that has been actively embraced by each of Bonanza Creek and Extraction. The model is defined by operational discipline, a strong balance sheet, commitment to free cash flow generation, financial alignment with stakeholders, environmental and community leadership, and best-in-class governance. Civitas is also proud that, inclusive of the Crestone assets, it will be Colorado's first carbon neutral oil and gas producer (scope 1 and scope 2) upon closing, advancing its net-zero goals.

**STRATEGIC RATIONALE**

- The acquisition of Crestone will strengthen the strategic rationale underlying the formation of Civitas, as it is projected to enhance the Company's scale, in-basin diversification, balance sheet, and liquidity profile. Civitas will have established itself as the preferred consolidation partner in the target-rich DJ Basin, which will help increase its trading liquidity and market relevance, and ultimately elevate its presence among top energy producers in the country.

- With the addition of Crestone, Civitas will operate across more than half a million net acres, with leasehold positions in all key areas of the DJ Basin. The Company will also have an estimated production base of approximately 160,000 barrels of oil equivalent per day (on a pro forma 1Q21 production basis) and YE20 SEC proved reserves of more than 530 MMBoe.

- Crestone's primary shareholder is Canada Pension Plan Investment Board ("CPP Investments"). CPP Investments will become Civitas' largest shareholder and will designate one member to the Civitas board upon closing.

- Civitas is committed to returning capital to shareholders through increased dividends and anticipates that the previously announced Civitas annual dividend of $1.60/share will be increased to $1.85 at closing, with the continued potential for additional increases, share repurchases and special dividends.

- The acquisition of Crestone is expected to be accretive on all 2022 estimated key metrics, including cash flow per share, dividends per share, inventory quality, credit profile and cost of capital. Civitas, pro forma for the Crestone transaction, is expected to generate more than $1.3 billion in 2022E EBITDA and more than $575 million in 2022E free cash flow.

- Civitas expects to target flat to low production growth with moderate cash flow reinvestment.

- The Company's enhanced financial profile is expected to accelerate cash returns to shareholders. The integration of Crestone is expected to result in approximately $45 million of annual synergies, in addition to approximately $25 million in annual synergies associated with the Bonanza Creek/Extraction merger.

- The acquisition of Crestone will further advance Civitas' industry-leading ESG strategy, demonstrated by the Company's commitment to achieve net-zero emissions. Civitas has an intensive, continuing focus to reduce operational emissions and a multi-year investment in certified emissions offsets.

- Upon closing, Civitas will provide a progressive framework for achieving its ESG targets, which it believes will address the interests of its operating partners, employees, and service providers.

- Civitas was created with the goal of operating in partnership with, and delivering unprecedented value to, its communities. To that end, Civitas is committed to demonstrating industry-leading alignment with its community stakeholders through transparent communication, safe and responsible operations, and innovative community projects.

**COMMENTARY**

Eric Greager, President and Chief Executive Officer of Bonanza Creek, said, "We are actively building one of the most durable and profitable producers in the DJ Basin. Our combination with Crestone is just one early marker of what we hope to achieve as Civitas, as we establish ourselves as the preferred consolidation partner

in the DJ Basin and work toward becoming one of the top energy producers in the nation."

Tom Tyree, Chief Executive Officer of Extraction, said, "Crestone brings to Civitas complementary, premium assets at the front end of the cost curve, along with common organizational and community values, including an aggressive commitment to sustainability. We look forward to creating significant value for all stakeholders and furthering Civitas' standing as an ESG leader among oil and gas producers in Colorado."

Tony Buchanon, President and Chief Executive Officer of Crestone, said, "The benefits of in-basin consolidation are compelling, and we are pleased to become part of the dynamic enterprise that is Civitas. Crestone has long been a leader in safety and sustainability issues, and we look forward to continuing that leadership at Civitas."

"Over the past five years of our investment in Crestone, the company has demonstrated its commitment to operational strength and efficiency, along with its introduction of innovative sustainability practices. The combination of Crestone with Civitas creates a stronger platform in the DJ Basin with significant free cash flow and the potential to continue value creation," said Michael Hill, Managing Director and Americas Head of Sustainable Energy, CPP Investments.

**GOVERNANCE AND TRANSACTION DETAILS**

Following the closing of the transaction with Crestone, Civitas' board of directors will increase from eight to nine. Each of Bonanza Creek and Extraction will designate four directors, with CPP Investments designating one director. All board members will stand for re-election annually. As previously announced, Bonanza Creek President and Chief Executive Officer, Eric Greager, will serve as President and CEO of Civitas.

"Our board will reflect exceptional competence, diversity, and governance standards, consistent with our focus on share price performance and our commitment to industry-leading sustainability practices. We also warmly welcome a CPP Investments director designee to Civitas," commented Ben Dell, current Chair of the Board of Extraction, who will serve as Chair of Civitas.

Under the terms of the definitive agreement, shareholders of Crestone will exchange 100% of the equity interests in Crestone for approximately 22.5 million shares of Bonanza Creek common stock. Upon completion of the all-stock transaction, Bonanza Creek and Extraction shareholders will each own approximately 37% of Civitas and Crestone shareholders, including CPP Investments, will own approximately 26% of Civitas. The Company will be headquartered in Denver, Colorado.

The Crestone transaction, which is expected to close immediately following the Bonanza Creek/Extraction merger in the fall of 2021, has been unanimously approved by the boards of directors of Bonanza Creek, Extraction and Crestone, and fully approved by Crestone's shareholders. Kimmeridge Energy and CPP Investments have entered into support agreements to vote in favor of the transaction. The transaction is subject to customary closing conditions, including approvals by Bonanza Creek shareholders and consummation of the Bonanza Creek / Extraction merger.

### B. The Materially Incomplete and Misleading Proxy

26. On September 28, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Financial Forecasts*

27. The Proxy discloses financial projections for both the Company and Bonanza Creek which are materially misleading. The Proxy indicates that in connection with the rendering of Petrie Partners' fairness opinion, Petrie Partners reviewed "certain non-public projected financial and operating data relating to Extraction and Bonanza Creek prepared and furnished to Petrie Partners by the management team and staff of Extraction and Bonanza Creek." Petrie Partners also reviewed "certain non-public projected financial and operating data relating to Crestone Peak prepared and furnished to Petrie Partners by the management team and staff of Extraction and Crestone Peak." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Extraction's management provided to the Board and Petrie Partners.

28. Notably, the Proxy failed to disclose the line items underlying and used to calculate: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Petrie Partners' Financial Analyses*

29. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 8% to 35%; (ii) the long-term debt and estimated net working capital as of March 31, 2021; and (iii) the estimated synergies expected from the transaction.

30. With respect to the *Property Transaction Analysis*, the Proxy fails to disclose the individual multiples for each of the transactions used in the analysis.

31. With respect to the *Capital Market Comparison Analysis,* the Proxy fails to disclose the individual multiples for each of the companies used in the analysis.

32. With respect to the *Corporate Transaction Analysis*, the Proxy fails to disclose the individual multiples for each of the transactions used in the analysis.

33. With respect to the *Going Concern Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying Petrie Partners' use of the multiples employed in the analysis; and (ii) the individual inputs and assumptions underlying Petrie Partners' use of the discount rates in the analysis.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

34. The Proxy also fails to disclose material information concerning the sales process.

35. For example, the Proxy fails to state whether the confidentiality agreements Extraction entered into with at least fourteen parties (other than Bonanza Creek) are still in effect

and/or contain DADW standstill provisions that are presently precluding each and every one of these fourteen parties from making a topping bid for the Company.

36. The disclosure of the terms of any standstill provisions is crucial to Extraction stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information is especially important where, as here, the Proxy is silent as to whether any confidentiality agreements contained a standstill agreement and whether any standstill agreements have been waived.

37. The Proxy also fails to provide any adequate detail regarding the nature, timing, and who participated in, any communications concerning post-transaction employment and the compensation for such employment.

38. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

39. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

40. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information

referenced above.

41. Further, the Proxy indicates that on May 9, 2021, and June 6, 2021, Petrie Partners reviewed with the Board its financial analyses of the Proposed Transaction and delivered to the Board oral opinions, which were confirmed by delivery of written opinions dated May 9, 2021, and June 6, 2021, to the effect that the Proposed Transaction was fair, from a financial point of view, to Extraction stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Petrie Partners' financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

42. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Defendants have filed the Proxy with the SEC with the intention of soliciting Extraction stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

45. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Extraction,

were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Extraction shares and the financial analyses performed by Petrie Partners in support of its fairness opinion; and (iii) the sales process.

48. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Petrie Partners reviewed and discussed its financial analyses with the Board during various meetings including on May 9, 2021, and June 6, 2021, and further states that the Board considered Petrie Partners' financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

49. The misrepresentations and omissions in the Proxy are material to Plaintiff, who

will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.  The Individual Defendants acted as controlling persons of Extraction within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Extraction and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 8, 2021

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*